AUSAs: Justin L. Brooke, Jared D. Hoffman

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

24 MJ 3128

| | |
|---|---|
| UNITED STATES OF AMERICA | **SEALED COMPLAINT** |
| v. | Violation of 18 U.S.C. § 1951 |
| IBERSON JIMENEZ, a/k/a "Prenda," | COUNTY OF OFFENSE: WESTCHESTER |
| Defendant. | |

SOUTHERN DISTRICT OF NEW YORK, ss.:

JUSTIN GRAY, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

## COUNT ONE
### (Conspiracy to Commit Hobbs Act Robbery)

1. Between at least on or about March 18 and March 19, 2024, in the Southern District of New York and elsewhere, IBERSON JIMENEZ, a/k/a "Prenda," the defendant, and others known and unknown, knowingly combined, conspired, confederated, and agreed together and with each other to commit robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), and would and did thereby obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, the defendant conspired together and with others to rob a warehouse that sells various unlicensed marijuana and nicotine products in Mount Vernon, New York.

(Title 18, United States Code, Section 1951.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

1. I have been a Special Agent with the FBI since approximately January 2018. Prior to joining the FBI, I was an investigator with the Brooklyn District Attorney's Office since 2015. Over the course of my career, I have participated in numerous investigations of homicides, armed robberies, firearms offenses, conspiracies to commit violent crimes, and drug trafficking offenses. I have been personally involved in the investigation of this matter.

2. This affidavit is based upon my personal participation in this investigation, my conversations with other law enforcement personnel, and my review of law enforcement records and other evidence, and my training, experience, and advice received relating to investigations into homicides, armed robberies, firearms offenses, conspiracies to commit violent crimes, and drug trafficking crimes. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during my investigation. Where

the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

3. Based upon my participation in the investigation of this matter, my conversations with members of the Mount Vernon Police Department ("MVPD") and other members of the FBI investigating this matter, my review of video surveillance, and my review of related law enforcement reports and records, I have learned the following:

a. On or about March 18, 2024, at approximately 10:00 p.m., two customers (the "Customers") arrived at an address on South Fifth Avenue in Mount Vernon, New York, a wholesale warehouse that sells various unlicensed marijuana and nicotine products (the "Warehouse"). The two Customers placed an order for a large quantity of vapes and hookahs, among other items, from the Warehouse. It took employees of the Warehouse approximately two hours to prepare their order.

b. A little after midnight, on March 19, 2024, after the Customers' order was prepared, two employees from the Warehouse helped the Customers carry the boxes containing the Customers' merchandise from the Warehouse to the Customers' vehicle. At that point, according to statements provided by the Warehouse employees and the Customers, as well as video surveillance, roughly between 10 and 15 people (the "Co-Conspirators"), exited a van (the "Van") that was parked near the Warehouse and ran over to the Warehouse's employees and Customers. Many of the Co-Conspirators possessed and brandished firearms.

c. According to one of the two Customers, when the Co-Conspirators got out of the Van, they ran over to the two employees and the Customers, pointed their firearms at them, forced them to go back inside the Warehouse, and shouted, "lay down, lay down." Still images from video surveillance outside the Warehouse during the armed robbery are depicted below:



 

d.      Shortly after the Co-Conspirators jumped out of the Van and approached the Warehouse employees and Customers with firearms, a gunfight between the Warehouse employees and the Co-Conspirators broke out.

e.      At approximately 12:15 a.m., multiple MVPD officers responded to the armed robbery at the Warehouse. At the Warehouse, the MVPD officers observed a black male lying on the floor with an apparent gunshot wound to his head. He was wearing green and white sneakers, grey and black jeans, and a black Nike hooded sweatshirt with the hood covering his face. Emergency Medical Services ("EMS") on scene pronounced him dead at 12:36 a.m. Based on a fingerprint analysis I performed on the deceased individual and my participation in this investigation, I know the identity of this deceased individual and am aware that he was one of the Co-Conspirators who participated in the armed robbery of the Warehouse.

f.      At the Warehouse, MVPD officers also observed another male lying under a shelving unit in the Warehouse, with two apparent gunshot wounds to his torso, one gunshot wound to his left upper chest, and one to the lower left abdomen (the "Victim"). EMS transported the Victim to a Mount Vernon hospital, where he was pronounced dead at 1:07 a.m. An employee of the Warehouse confirmed that the Victim was also an employee of the Warehouse.

g.      At the Warehouse, MVPD officers recovered an AR-15 firearm, four AR spent shell casings, and three spent 9mm shell casings. According to a Warehouse employee, the AR-15 was owned by the Warehouse and stored behind the register for protection purposes. Law enforcement also seized from the Warehouse approximately 1,665 pounds of marijuana recovered in leafy form, and 1,107 pounds of Tetrahydrocannabinol-infused edibles.

h. Based on my participation in this investigation, I am aware that a source of confidential information[1] ("CI-1") participated in voluntary interviews with the FBI and told them,

---

[1] CI-1 has prior convictions for disorderly conduct and theft by unlawful taking. CI-1 has previously provided information to federal law enforcement which has proven reliable and been

3

in substance and in part, that he participated in the armed robbery and that another participant of the armed robbery told CI-1 that the group expected to rob the Warehouse of a large quantity of marijuana, and that that members of the group intended to sell the marijuana after they stole it.

## Identification of the Defendant

10.     On or about March 20, 2024, several of the Co-Conspirators were arrested and charged for their roles in the attempted armed robbery. One of the arrested Co-Conspirators consented to a search of his cellphone (the "Co-Conspirator's Cellphone") by the FBI. Based on location data obtained from the Co-Conspirator's Cellphone, I learned that the Co-Conspirator's Cellphone was in the vicinity of a certain building on Exterior Street (the "Exterior Street Building") in the Bronx, New York, from approximately 2:25 p.m. to around 8:56 p.m. on March 18, 2024, prior to the armed robbery. The Co-Conspirator's Cellphone left the vicinity of the Exterior Street Building at approximately 8:56 p.m. and traveled to a gas station near the Major Deegan Expressway near 233rd Street, where the Co-Conspirator's Cellphone was located between in or around 9:00 p.m. and 9:32 p.m.

11.     Based on my participation in this investigation, I am aware that a second source of confidential information[2] ("CI-2") participated in voluntary interviews with members of law enforcement. Based on my participation in those interviews, I am aware that CI-2 stated, in substance and in part, the following: (a) CI-2 participated in the attempted armed robbery of the Warehouse with an individual known to CI-2 as "Prenda"; (b) a few hours before committing the armed robbery, the Co-Conspirators, including the individual known to CI-2 as "Prenda," gathered at the Exterior Street Building; (c) when the Co-Conspirators left the Exterior Street Building to drive to Mount Vernon to commit the armed robbery of the Warehouse, a group of Co-Conspirators, including "Prenda", first convened at a gas station; and (d) during the armed robbery of the Warehouse, "Prenda" jumped out of the Van and brandished a firearm at the Warehouse employees and Customers.

12.     As part of this investigation, I obtained a search warrant to search CI-2's cellphone. When I searched through CI-2's cellphone, I discovered a cellphone number for a contact labeled "Prenda" (the "Prenda Number"). Based on my review of records that I obtained in response to a search warrant for cell tower log information, I am aware that the cellphone using the Prenda Number was in the vicinity of the Exterior Street Building and a gas station off the Major Deegan Expressway at the same time that the Co-Conspirator's Cellphone was in the vicinity of those locations, see ¶ 10, which corroborates CI-2's account of "Prenda's" location prior to the attempted armed robbery. Based on my training and experience, including experience using cellphone location information in the investigation of violent crimes, that fact that the Prenda Number was located in the vicinity of a Co-Conspirator's cellphone at two separate times and locations in the immediate hours prior to the attempted armed robbery is consistent with the individual using the

---

corroborated. CI-1 did not, however, disclose his involvement in this robbery until after it was completed.

[2] CI-2 has no prior convictions and is providing information to law enforcement with the hopes of receiving leniency at sentencing. The information CI-2 has provided to federal law enforcement has proven reliable and been corroborated.

Prenda Number traveling with the Co-Conspirators before the attempted armed robbery of the Warehouse.

        13.    As part of this investigation, I also searched a public records database for any known associations with the Prenda Number and found that the Prenda Number was associated with the name "Ibserson Rosario" and a particular address in Jersey City, New Jersey (the "Jersey City Address"). In that same database, the Jersey City Address is associated with various people, including "Iberson Rosario Jimenez" with a particular date of birth (the "Jimenez DOB"). I then searched the name "Iberson Rosario Jimenez" together with the Jimenez DOB through New Jersey's criminal history database, which returned the photograph depicted below:



        14.    During a voluntary interview with members of law enforcement, I showed the photograph above to CI-2, who identified the individual depicted as the person he knew as "Prenda," and the person he knew participated in the attempted armed robbery of the Warehouse. In the presence of law enforcement, CI-2 reviewed video surveillance from outside the Warehouse during the attempted armed robbery. Prior to viewing the video surveillance, I instructed CI-2 that if he saw the individual he knew as "Prenda," to point to that individual on the video surveillance. I played for CI-2 the video surveillance from the beginning, and CI-2 identified the individual in the below still image from the video surveillance as the person he knew as "Prenda." CI-2 identified "Prenda" based on the distinctive clothing "Prenda" was wearing during the attempted armed robbery, including "Prenda's" mismatched footwear:



WHEREFORE, I respectfully request that a warrant be issued for the arrest of IBERSON JIMENEZ, a/k/a "Prenda," the defendant, and that he be arrested, and imprisoned or bailed, as the case may be.

_____
JUSTIN GRAY
Special Agent
Federal Bureau of Investigation

Sworn to me this 28th day of August, 2024.

_____
THE HONORABLE VICTORIA REZNIK
United States Magistrate Judge
Southern District of New York